UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BASKIN-ROBBINS FRANCHISING LLC : <br> and BR IP HOLDER LLC : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> HANNAH AND JACK'S TREATS, LLC : <br> and MARC CERRA : <br> : <br> Defendants. : | C.A. No. 2016- _____ |

## VERIFIED COMPLAINT

Defendants have and are continuing to infringe upon Plaintiffs' trademarks by operating an unauthorized ice cream shop and ice cream truck.  Defendants also have breached their agreements with Plaintiffs.  As a result, Plaintiffs have filed this lawsuit against Defendants Hannah and Jack's Treats, LLC ("Hannah and Jack's") and Marc Cerra ("Cerra") seeking injunctive relief, compensatory damages, treble damages, and attorneys' fees.

## PARTIES

1.       Plaintiff Baskin-Robbins Franchising LLC is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  It is engaged in the business of franchising independent businesspersons to own and operate Baskin-Robbins stores throughout the United States.  Baskin-Robbins franchisees are licensed to use the trade names, service marks, and trademarks of Baskin-Robbins and to operate under the Baskin-Robbins system, which involves the production, merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

4824-5371-6532.1

2.      Plaintiff BR IP Holder LLC, successor-in-interest to Baskin-Robbins Incorporated, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  Unless otherwise specified, Baskin- Robbins Franchising LLC and BR IP Holder LLC are hereinafter collectively referred to as "Baskin-Robbins" or "Baskin."

3.      Hannah and Jack's is a Connecticut limited liability company that operates a business located at 25 Old Kings Highway North, Darien, Connecticut, and whose operations include a mobile ice cream vending truck.

4.      Upon information and belief, Cerra is the sole member and manager of Hannah and Jack's.  Cerra is a citizen and resident of the State of Connecticut.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to Sections 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116 (a) & 1121, and 28 U.S.C. §§ 1331, 1332(a), 1338, & 1367(a).  The amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      This Court has *in personam* jurisdiction over Defendants because they conduct business in this district, they are residents of this district, and/or the events giving rise to Plaintiffs' claims occurred in this district.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and/or a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## FACTS

### The Baskin-Robbins System and its Trademarks, Service Marks and Trade Dress

8.      Baskin-Robbins is the franchisor of the Baskin-Robbins franchise system.

2

9.      Through its expenditure of time, effort and money, Baskin-Robbins has acquired experience and skill in the continued development of the Baskin-Robbins System, which involves the conceptualization, design, specification, development, marketing, franchising and licensing of restaurants and associated concepts for the sale of proprietary and non-proprietary food and beverage products.

10.      BR IP Holder LLC is the owner of the trademark, service mark, and trade name *Baskin-Robbins®* and related marks.  This property includes trademarks, service marks, logos, emblems, trade dress, trade names, including and other indicia of origin, as well as patents and copyrights.  Baskin-Robbins has the exclusive license to use and to license others to use these marks and trade names and has, along with its predecessors, used them continuously since 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores.

11.      The Baskin-Robbins trademarks are utilized in interstate commerce.

12.      BR IP Holder LLC owns numerous federal registrations for the mark "Baskin-Robbins," and related marks.  Among those registrations are Registration Nos. 1,185,045, 1,371,672, and 4,425,689.  Each of these registrations is in full force and effect, and is incontestable pursuant to 15 U.S.C. § 1065.

13.      The Baskin-Robbins marks have been very widely advertised and promoted by Baskin-Robbins over the years.  As a result, the Baskin-Robbins marks have become famous throughout the United States.

14.      Baskin-Robbins franchisees currently operate approximately 2,500 shops in the United States and 7,300 shops around the world.  In the more than sixty years since the Baskin-Robbins System began, millions of consumers have been served in Baskin-Robbins stores.

15.      As a result of the extensive sales, advertising, and promotion of items identified

4824-5371-6532.1

by the Baskin-Robbins marks, the public has come to know and recognize the Baskin-Robbins marks, and to associate them exclusively with products and services offered by Baskin-Robbins and its franchisees.  The Baskin-Robbins marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Baskin-Robbins, representing and embodying Baskin-Robbins' considerable goodwill and favorable reputation.

16.      Within the Baskin-Robbins System, Baskin-Robbins shops worldwide present a uniform appearance that is instantly recognized.  This appearance is Baskin-Robbins' trade dress or commercial image and embodies Baskin-Robbins' reputation for quality.  The trade dress includes the following items:  shape and general appearance of the exterior; identifying sign, interior floor plan and layout; appointments, interior furniture and décor items; display cases; servers' uniforms; color scheme; and menu and menu items. The Baskin-Robbins trade dress creates a unique and arbitrary visual impression and is inherently distinctive.

### Agreements with Hannah and Jack's for the Operation of a Franchise in Darien, Connecticut

17.      On or about May 1, 2014, Baskin-Robbins entered into a Franchise Agreement with Hannah and Jack's, as a franchisee, for the operation of a restaurant located at 25 Old Kings Highway North, Darien, Connecticut ("Darien Restaurant").  A copy of the Franchise Agreement is attached as Exhibit A.

18.      Section 2.1 of the Terms and Conditions of the Franchise Agreement state that "[i]n connection with the [Baskin-Robbins System], we [i.e., Baskin-Robbins] own or have the right to license intellectual property.  This property includes trademarks, service marks, logos, emblems, trade dress, trade names, including *Baskin-Robbins*®, and other indicia of origin (collectively, the 'Proprietary Marks'), as well as patents and copyrights.  The Proprietary Marks include trademarks on the Principal Register of the United States Patent and Trademark Office.

4

From time to time we may supplement or modify the list of Proprietary Marks associated with the [Baskin-Robbins System]." A copy of the Terms and Conditions is attached as <u>Exhibit B</u>.

19.     Section 9 of the Terms and Conditions prescribes that Hannah and Jack's may only use the Proprietary Marks subject to and in strict compliance with Baskin-Robbins' ownership, standards and requirements. Hannah and Jack's has no rights in the Proprietary Marks or the Baskin-Robbins System other than those explicitly granted in the Franchise Agreement.

20.     Section 10.2 of the Terms and Conditions prescribes that neither Hannah and Jack's nor Cerra as Hannah and Jack's shareholder, member partner, officer, director or guarantor who has a direct or indirect beneficial interest in the franchised business "may have any direct or indirect interest in, perform any activities for, provide any assistance to or receive any financial or other benefit from any business or venture (other than an ownership interest in eal property) that sells products that are the same as or substantially similar to those sold in Basin-Robbins restaurants and located within five (5) miles from the Restaurant or any other Baskin-Robbins restaurant that is open or under development." This restrictive covenant lasts twenty four (24) months after the expiration of the Franchise Agreement.

21.     In exchange for the right to use the Proprietary Marks, and for other valuable consideration recited in <u>Exhibit A</u>, Hannah and Jack's contracted to report to Baskin-Robbins its gross weekly sales for the Darien Restaurant and to pay each week franchise and advertising fees calculated as a percentage of gross sales made at the Darien Restaurant. Also, on or about May 1, 2014, Hannah & Jack's executed a Promissory Note in favor of Baskin-Robbins with principal and interest totaling $15,445.95. A copy of the Promissory Note is attached as <u>Exhibit C</u>.

4824-5371-6532.1

22.     Further, on or about May 1, 2014, Cerra executed a Personal Guarantee, whereby he personally guaranteed the monetary obligations of Hannah and Jack's to Baskin-Robbins under Sections 5 (Fees, Payments and Reporting of Sales) of the Terms and Conditions and the franchisee's performance of all of other obligations under the Franchise Agreement, including Section 10 (Restrictive Covenants) of the Terms and Conditions.  Cerra acknowledged and agreed that the Franchise Agreement was binding upon him personally.  A copy of the Personal Guarantee is attached as Exhibit D.

23.     On or about September 28, 2015, Baskin-Robbins and Hannah and Jack's entered into a First Amendment to Franchise Agreement in order to allow the franchisee additional time to qualify for renewal by paying all amounts due under the Franchise Agreement and the Promissory Note and to complete a contractually-obligated remodel of the restaurant to conform to Baskin-Robbins' then-current brand image.  Under the First Amendment of the Franchise Agreement, the term of the Franchise Agreement was extended until March 31, 2016.   Unless specifically addressed in the First Amendment to Franchise Agreement, all other terms of the Franchise Agreement remained in full force and effect.  A copy of the First Amendment to Franchise Agreement is attached as Exhibit E.

**Hannah and Jack's Defaults under the Franchise Agreement**

24.     On December 22, 2015, Baskin-Robbins sent a Notice to Cure to Hannah and Jack's because of the franchisee's failure to comply with the requirements of the Franchise Agreement.  Specifically, Baskin-Robbins stated its intention to terminate Hannah and Jack's franchise for failure to report gross sales and to make delinquent payments totaling $16,079.80 owed to Baskin-Robbins through December 21, 2015.  Baskin-Robbins notified Hannah and Jack's that the franchisee was required to cure these payment defaults within fifteen days.  The

4824-5371-6532.1

Notice to Cure was sent to Hannah and Jack's via Federal Express overnight delivery and the tracking receipt confirms that Cerra accepted and signed for the delivery on December 23, 2015. A copy of the Notice to Cure with delivery and tracking information is attached as <u>Exhibit F</u>.

25.     Hannah and Jack's ignored completely its obligation to cure its defaults.

### Baskin-Robbins' Notice of Termination

26.     On January 19, 2016, Baskin-Robbins sent a Notice of Termination to Hannah and Jack's because of its continuing delinquency of its financial obligations under the Franchise Agreement and its failure to cure the defaults set forth in the December 22, 2015 Notice to Cure. The Notice of Termination informed Hannah and Jack's that the Franchise Agreement would be terminated effective as of February 22, 2016.  Further, the Notice of Termination demanded that Hannah and Jack's take all actions necessary to comply with its post-termination obligations as set forth in the Franchise Agreement.

27.     The Notice of Termination was sent to Hannah and Jack's by Federal Express overnight delivery, first class mail and e-mail.  The Federal Express tracking information confirms that Cerra accepted and signed for the delivery on January 20, 2016.  A copy of the Notice of Termination with delivery and tracking information is attached as <u>Exhibit G</u>.

28.     Sections 14.6 and 14.7 of the Terms and Conditions set forth Hannah and Jack's obligations upon termination of the Franchise Agreement.  These obligations include that, upon termination, Hannah and Jack's must pay all monies owed under the Franchise Agreement within ten days, must immediately cease operation of the Darien Restaurant and no longer represent itself to the public as a Baskin-Robbins franchisee, must immediately cease all use of the Proprietary Marks, trade secrets, confidential information, and manuals, and must immediately cease to participate directly or indirectly in the use or benefits of the Baskin-Robbins System.

4824-5371-6532.1

29.     Hannah and Jack's ignored completely the Notice of Termination and the franchisee's post-termination responsibilities.

30.     Hannah and Jack's agreed to pay all reasonable attorneys' fees and costs incurred by Baskin-Robbins in enforcing termination and collecting all amounts due.

**Hannah and Jack's Unlawful Use of the Proprietary Marks Leads to the First Lawsuit**

31.     Since the February 22, 2016 effective date of the termination of its franchise, Hannah and Jack's used the Proprietary Marks maliciously, fraudulently, willfully, and deliberately in violation of the Franchise Agreement.

32.     As a result, Baskin-Robbins filed a lawsuit in the United States District Court for the District of Connecticut, C.A. No. 3:16-cv-405-SRU on March 10, 2016 (the "First Lawsuit"), seeking injunctive relief as well as compensatory damages, treble damages, and attorneys' fees for Plaintiffs' violation of the Lanham Act and Breach of the Franchise Agreement and Personal Guarantee.

33.     After being served with the First Lawsuit, Defendants contacted Baskin-Robbins and, through negotiation, eventually promised to close the Baskin-Robbins shop.

34.     Thereafter, Baskin-Robbins voluntarily dismissed the First Lawsuit without prejudice.

**Hannah and Jack's Continued Unlawful Use of the Proprietary Marks**

35.     In June 2016, Baskin-Robbins became aware that Defendants were continuing to their unauthorized use of Baskin-Robbins' name, trademarks, service marks and trade dress as well as improperly selling ice cream products in violation of their contractual post-termination obligation not to compete against Baskin-Robbins.

4824-5371-6532.1

36.     Defendants also have and continue to drive an ice cream truck bearing Baskin-Robbins' name, marks, and trade dress.  The ice cream truck is being driven by Cerra personally and has been parked in public locations for the purpose of selling ice cream out of the truck.

37.     For example, Defendants sold ice cream of unknown origin from the truck with Baskin-Robbins' name, marks, and trade dress on June 6, 2016, at an event in New Milford, Connecticut, which wrongly suggested to patrons that Defendants were authorized to do so by Baskin-Robbins and that Defendants were offering Baskin-Robbins products for sale.

38.     Defendants also are displaying Baskin-Robbins' name, marks and trade dress on Hannah & Jack's webpage (http://www.festivals-and-shows.com/baskin-robbins-van-baskin-robbins-ice-cream-danburyconnecticut.html) and its Facebook page titled as "Baskin-Robbins Van" (https://www.facebook.com/baskin.robbins.14606), which constitutes further unlawful infringements.

39.     In a letter dated June 24, 2016, Baskin-Robbins notified Defendants of their continuing infringement of Baskin-Robbins' proprietary marks and demanded that they cease and desist their infringement, breach of contract, and unlawful activity.  A copy of the cease and desist letter is attached as Exhibit H.

40.     The photographs attached as Exhibit I and taken by Baskin-Robbins Operations Manager Donella Boscia on June 6, 2016, show Hannah and Jack's continuing, unlawful and unauthorized use of the Proprietary Marks concerning the ice cream truck.

41.     There is no indication that Hannah and Jack's will cease its unauthorized operations and unauthorized use of Baskin-Robbins' Proprietary Marks without judicial intervention.

**Violation of the Restrictive Covenant and Non-Competition Clause**

42.     As explained above, there is a continuing contractual obligation under Section 10.2 of the Terms and Conditions of the Franchise Agreement, which imposes a twenty-four month restrictive covenant after the expiration of the Agreement prohibiting Hannah and Jack's, Cerra, or any of Cerra's business interests from selling any products that are the same or substantially similar to those sold at any Baskin-Robbins restaurant within five miles of Hannah and Jack's Darien shop.

43.     Baskin-Robbins has a restaurant in Norwalk within five miles of Hannah and Jack's Darien location.

44.     Hannah & Jack and Cerra are breaching the restrictive covenant by their continuing sales of ice cream in Hannah & Jack's Darien location.

45.     Similarly, the non-competition clause applies to any sales of ice cream from Hannah and Jack's ice cream truck, even after its required de-identification.

## COUNT I
## (Violation of Lanham Act - Trademark Infringement)

46.     Baskin-Robbins incorporates paragraphs 1-45.

47.     Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant -- use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

48.     Defendants have marketed and promoted and continue to market and promote a *Baskin-Robbins*® shop through the unauthorized use of the Proprietary Marks, and such use has caused and is likely to continue to cause confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act.

49.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods [or] services . . . shall be liable in a civil action . . . ."

50.     Defendants' acts of marketing and promoting its ongoing business operations through and with the Proprietary Marks, constitutes:

(a)  a false designation of origin;

(b)  a false and misleading description of fact; and

(c)  a false and misleading representation of fact;

that has caused and is likely to continue to cause confusion, or to cause mistake, or deception, as to the affiliation of the Darien Restaurant with Baskin-Robbins, and to cause confusion, or to cause mistake, or deception, to the effect that Baskin-Robbins sponsors or approves of the products that Defendants are selling, all in violation of Section 43(a) of the Lanham Act.

51.     Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides in pertinent part that "[t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous

4824-5371-6532.1

and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection."

52.    Defendants' continuing, improper and unauthorized use of the Proprietary Marks has caused and will continue to cause dilution and disparagement of the distinctive quality of the Proprietary Marks, and has lessened and will continue to lessen the capacity of the Proprietary Marks to identify and distinguish the goods and services of Baskin-Robbins, all in violation of Section 43(c) of the Lanham Act.

53.    Defendants' continuing acts of infringement are malicious, fraudulent, willful, and deliberate.

54.    Defendants' continuing acts of infringement have inflicted irreparable harm on Baskin-Robbins.

55.    Under Section 14.5 of the Terms and Conditions, Defendants explicitly acknowledged that because of the goodwill enjoyed by the Proprietary Marks, money damages may not be a sufficient remedy for the franchisee's breaches.  Defendants have agreed "not to contest the appropriateness of injunctive relief for such breaches and consent to the grant of an injunction in such cases without the showing of actual damages, irreparable harm or the lack of an adequate remedy at law."

## COUNT II
### (Breach of the Franchise Agreement and Personal Guarantee)

56.    Baskin-Robbins incorporates paragraphs 1-55.

57.    Hannah and Jack's has breached the Franchise Agreement in several material respects, including its failure to report gross sales, make required payments, or undertake its post-termination performance obligations.

4824-5371-6532.1

58.     Cerra has breached his Personal Guarantee by failing to pay any of the outstanding payments owed by Hannah and Jack's or to ensure the now-terminated franchisee's performance of its obligations under the Franchise Agreement.

59.     Defendants have breached the Franchise Agreement's post-termination responsibilities and non-competition clause.

60.     As a result of Hannah and Jack's breach of the Franchise Agreement and Cerra's breach of the Personal Guarantee, Baskin-Robbins has been damaged and will continue to incur damages.

**COUNT III**
**(Breach of the Franchise Agreement's Restrictive Covenant and Non-Competition Clause)**

61.     Baskin-Robbins incorporates paragraphs 1-60.

62.     Hannah and Jack's and Cerra have breached the Franchise Agreement's restrictive Covenant and Non-Competition Clause in several material respects, including their continued operation of an ice cream store and ice cream truck within five miles of another Baskin-Robbins store location.

63.     As a result of Hannah and Jack's breach of the Franchise Agreement's restrictive covenant, Baskin-Robbins has been and damaged and will continue to incur damages.


WHEREFORE, Baskin-Robbins requests the following relief against Defendants:

(1)     Entry of preliminary and permanent injunctions against Hannah and Jack's and Cerra, as well as their agents, servants and employees, prohibiting them from directly, indirectly or in any manner whatsoever, using, infringing or diluting the Proprietary Marks and requiring Hannah and Jack's to cease operation of its Darien Restaurant and its ice cream truck immediately, and de-identify the premises and the ice cream truck;

13

4824-5371-6532.1

(2)     Entry of judgment in favor of Baskin-Robbins against each Defendant, in such amounts owed for the breaches of the Franchise Agreement and Personal Guarantee, plus pre-judgment and post-judgment interest;

(3)     Entry of judgment in favor of Baskin-Robbins against each Defendant, in such amounts owed for the breaches of the Franchise Agreement's Restrictive Covenant, plus pre-judgment and post-judgment interest;

(4)     Award treble damages against each Defendant for the willful infringement of the Proprietary Marks;

(5)     Award all reasonable costs and attorney's fees incurred by Baskin-Robbins because of the unlawful acts of the Defendants; and

(6)     Such other and further relief as may be appropriate.


Plaintiffs,
BASKIN-ROBBINS FRANCHISING, LLC
    and BR IP HOLDER LLC,
By Their Attorney,


/s/ Steven M. Richard
Steven M. Richard (ct 26600)
Nixon Peabody LLP
One Citizens Plaza, 5th Floor
Providence, RI 02903
Tel:     (401) 454-1020
Fax:     (866) 947-1332
Email: srichard@nixonpeabody.com

Dated:   July 11, 2016

## VERIFICATION

I hereby certify that I am Assistant Secretary of Baskin-Robbins Franchising, LLC, have read this Verified Complaint, and attest that its averments are true and correct to the best of my knowledge and information.

Signed by me under oath under the pains and penalties of perjury on this 11th day of July, 2016.

_____
Jeffrey L. Karlin
Assistant Secretary

4824-5371-6532.1